# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR04-0088-MWB |
| vs. | |
| JOYCE ASHCRAFT, | |
| Defendant, | **ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S *PRO SE* OBJECTION TO GARNISHMENT** |
| and | |
| PRINCIPAL LIFE INSURANCE COMPANY, | |
| Garnishee. | |

_____

## TABLE OF CONTENTS

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *A. Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *B. Objection To Report and Recommendation* . . . . . . . . . . . . . . . . . . . . 9

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On November 10, 2004, an Information was filed against defendant Joyce Ashcraft charging her with making a false statement to the United States Department of Housing and Urban Development, in violation of 18 U.S.C. § 1001, making a false statement on a social security application, in violation of 18 U.S.C. § 1001, identity theft, in violation of 18 U.S.C. § 1029(a)(2), and bank fraud, in violation of 18 U.S.C. § 1344. On November 16, 2004, Ashcraft pleaded guilty to all four counts of the Information and on May 5, 2005, the Honorable Linda R. Reade sentenced defendant Ashcraft to a 108 month term of imprisonment to be followed by 60 months of supervised release. Defendant Ashcraft was also ordered to pay a $400 special assessment and $134,310.62 in restitution to 73 victims.

On February 9, 2012, Principal Life Insurance Company ("Principal") was served with a Writ of Continuing Garnishment, pursuant to 28 U.S.C. § 3205, by the prosecution seeking to garnish payments defendant Ashcraft has been receiving while incarcerated from her former employer's long term disability policy. On March 12, 2012, defendant Ashcraft filed her *pro se* Objection to Garnishment (docket no. 75). In her objection, defendant Ashcraft disputes the amount of her disability payments that may be garnished under the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. § 1672(a). On March 28, 2012, the prosecution filed its response to defendant Ashcraft's objection. The prosecution argues that the disability payments are not subject to a payment limitation found in the CCPA because they are not earnings as defined by the CCPA.

Defendant Ashcraft's *pro se* Objection to Garnishment was referred to United States Magistrate Judge Jon S. Scoles, pursuant to 28 U.S.C. § 636(b). On April 10, 2012, Judge Scoles conducted a hearing on Ashcraft's objection. On April 24, 2012, Judge

Scoles filed a Report and Recommendation in which he recommends that defendant Ashcraft's Objection to Garnishment be denied. In his Report and Recommendation, Judge Scoles concluded that defendant Aschraft's disability benefits are "property" rather than "earnings" under the CCPA and the Federal Debt Collection Procedure Act ("FDCPA"), 28 U.S.C. § 3002 *et seq*. Judge Scoles further concluded that as property, the disability benefits are not subject to the garnishment restrictions found in 15 U.S.C. § 1673(a) and not exempt from garnishment as "workmen's compensation" benefits. Therefore, Judge Scoles recommended that defendant Ashcraft's objection be denied.

On May 10, 2012, and May 11, 2012, defendant Ashcraft filed an objection to Judge Scoles's Report and Recommendation. The prosecution has not filed a response to defendant Ashcraft's objections. I, therefore, undertake the necessary review of Judge Scoles's recommended disposition of defendant Ashcraft's Objection to Garnishment.

## B. *Factual Background*

In his Report and Recommendation, Judge Scoles found the following facts:

> "According to Ashcraft, she has made monthly restitution payments since March 2007. The payments ranged from $80 to $147 per month. The United States has also intercepted Ashcraft's tax refunds. Mr. McLaughlin advised the Court that the current balance owed for restitution is $128,053.33, including a payment received on March 20, 2012.
>
> The dispute in this case involves the United State's ability to garnish payments received by Ashcraft from the Principal Life Insurance Company ("Principal"). As a consequence of a medical condition (asthma) which was aggravated by her employment at Amana Refrigeration, Ashcraft receives a monthly long-term disability payment from

3

> Principal. The payments are $702 per month, and are payable until November 2016 when Defendant turns age 65. Pursuant to the garnishment initiated by the United States, Principal has withheld $175.50 from each of the last two monthly payments. Apparently, however, Principal is holding the withheld amounts pending a resolution of Ashcraft's objection to garnishment.
>
> Prior to her imprisonment, Ashcraft was also receiving social security disability benefits. According to Ashcraft, her benefits were "suspended" during her incarceration, but she expects to start collecting benefits again upon her release. Ashcraft advised the Court that upon receipt of social security disability benefits, her Principal long-tem disability benefits will be reduced. Ashcraft did not know what the reduced monthly benefit would be.

Report and Recommendation at 2-3. Upon review of the record, I adopt all of Judge Scoles's factual findings.

## II. LEGAL ANALYSIS

### A. Standard Of Review

I review the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge

4

but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain

5

amendments affect 28 U.S.C. § 636(b))). Thus, while de novo review generally entails review of an entire matter, in the context of § 636 a district court's *required* de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit has been willing to "liberally construe[]" otherwise general pro se objections to require a de novo review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to me that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, I will strive to provide de novo review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give de novo review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed). I am unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads me to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[1]

---

[1] The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements

(continued…)

As noted above, defendant Ashcraft has filed objections to Judge Scoles's Report and Recommendation. I, therefore, undertake the necessary review of Judge Scoles's recommended disposition of defendant Ashcraft's Objection to Garnishment.

### B. *Objection To Report and Recommendation*

Defendant Ashcraft objects to Judge Scoles's conclusion that her disability benefits are not earnings. She argues that because her disability benefits are paid to her because she is unable to work, the disability benefits are paid in lieu of her wages and constitute

---

[1](…continued)
of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will *not* result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g.*, *United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions de novo." (citation omitted)).

earnings for the purposes of CCPA. Ashcraft further argues that her disability benefits may not be garnished due to the CCPA's limits on garnishment.[2]

The Mandatory Victims Restitution Act ("MVRA") requires restitution for certain crimes, "including any offense committed by fraud or deceit," 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii), and authorizes the United States to enforce a restitution order in accordance with its civil enforcement powers.[3] 18 U.S.C. §§ 3613(f), 3664(m)(1)(A); *see United States v. Lee*, 659 F.3d 619, 621 (7th Cir. 2011). The MVRA broadly permits the United States, notwithstanding any other federal law, to enforce a restitution order "against all property or rights to property of the person fined." 18 U.S.C. § 3613(a); *see Lee* F.3d at 621. The United States may enforce a restitution order by use of the FDCPA. *See United*

---

[2] The CCPA provides that

> the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed
> (1) 25 per centum of his disposable earnings for that week, or
> (2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable,
>
> whichever is less. In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).

15 U.S.C. § 1673(a).

[3] The FDCPA sets out the civil enforcement procedures the United States may employ to recover monies owed under a restitution order. 28 U.S.C. § 3001(a)(1).

*States v. Witham*, 648 F.3d 40, 49 (1st Cir. 2011); *United States v. Chorney*, 453 Fed. App'x 4, 7 (1st Cir. 2011). Section 3613 of the MVRA lists several exceptions to the United States's authority to garnish a debtor's property to satisfy a restitution order. However, § 3613(a)(2) explicitly states that the exemptions contained in § 3014 of the FDCPA do not apply to the enforcement of a federal criminal judgment.[4]

One enforcement procedure authorized by the FDCPA is a writ of garnishment. 28 U.S.C. § 3205(b)(1). The FDCPA authorizes a court to issue a writ of garnishment "against property (including nonexempt disposable earnings) in which the debtor has a substantial *nonexempt* interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor." 28 U.S.C. § 3205(a) (emphasis added). Ashcraft, as the party seeking to quash the garnishment order, bears the burden to show that an exemption to garnishment applies. 28 U.S.C. § 3205(c)(5); *United States v. Novak,* 476 F.3d 1041, 1064 (9th Cir. 2007); *United States v. Sawaf,* 74 F.3d 119, 121 (6th Cir. 1996).

Under the FDCPA, "earnings" is defined as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

---

[4] One exemption provided for in § 3014 is a debtor's right to receive a disability benefit. Section 3014 states that a debtor may elect to "exempt property . . . that is specified in § 522(d) of title 11, as amended from time to time." 28 U.S.C. § 3014(a)(1). Section 522(d), in turn, refers *inter alia* to a "debtor's right to receive . . . a disability . . . benefit." 11 U.S.C. § 522(d)(10)(C). The exemptions provided for in § 3014 are inapplicable to the enforcement of criminal fines and restitution. *See* 18 U.S.C. § 3613(a)(2).

28 U.S.C. § 3002(6).[5] Disability benefits or payments flowing from a disability insurance policy are not included in either the FDCPA's or the CCPA's definition of earnings. Ashcraft has not cited any decision holding that disability benefits constitute earnings under either the FDCPA or the CCPA, and my own research has located none. In *Kokoszka v. Belford,* 417 U.S. 642, 648 (1974), the United States Supreme Court cautioned that earnings do not pertain to every asset traceable in some way to compensation. The issue in *Kokoszka* was not disability benefits but whether an income tax refund check was subject to the CCPA's garnishment limitation. *Id.* at 648–49. The Court held that the income tax refund check was property, and not earnings, so the CCPA's garnishment limitation did not apply to it. *Id.* at 651. The Court observed that neither the CCPA's language nor the legislative history or purpose supported treating the tax refund as earnings even though it was traceable to earnings.[6] *Id.* at 650-652. Following *Kokoszka*, the Eighth Circuit Court of Appeals held that wages which have been converted into savings are no longer earnings under the CCPA. *Gehrig v. Shreves,* 491 F.2d 668, 674 (8th Cir. 1974). This distinction is in keeping with Congress's intent in passing the CCPA, which was to reduce the likelihood that garnishment would result in the debtor losing or quitting a job. *See* 15 U.S.C. § 1671(a)(2). The garnishment of disability benefits does not create a risk that the debtor will lose his or her incentive to be employed. Therefore, I find that the disability benefits being made to Ashcraft are not "earnings" under the FDCPA, and, are not subject

---

[5] Earnings has the same definition under the CCPA. *See* 15 U.S.C. § 1672(a).

[6] The purpose of § 1673(a) of the CCPA was to prevent debtors from "plunging into bankruptcy" by protecting at least 75 percent of their regular take home pay "in order to preserve their employment and insure a continued means of support for themselves and their families." H.R.Rep. No. 90-1040, at 10 (1968), *reprinted in* 1968 U.S.C.C.A.N.1962, 1977-79.

to the garnishment restrictions found in § 1673(a). Therefore, defendant Ashcraft's objection to Judge Scoles's Report and Recommendation is overruled.

### III.  CONCLUSION

Therefore, for the reasons discussed above, I, upon a *de novo* review of the record, accept Judge Scoles's Report and Recommendation and **deny** defendant Ashcraft's Objection to Garnishment.

**IT IS SO ORDERED.**

**DATED** this 8th day of June, 2012.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA